**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREEM MILLHOUSE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-00665** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court are: (1) the motion for summary judgment (Doc. No. 74) filed

by Defendants the United States of America, Andrew M. Edinger ("Edinger"), and Jessie Ayers

("Ayers"); and (2) pro se Plaintiff Kareem Millhouse ("Plaintiff")'s motion for summary

judgment (Doc. No. 95), motion for limited discovery (Doc. No. 97), motion for discovery (Doc.

No. 101), and motions to supplement (Doc. Nos. 107, 120).  The motions are fully briefed and

ripe for disposition.  The Court will also screen Plaintiff's claims against Defendants John Does

1-10 pursuant to the Prison Litigation Reform Act ("PLRA").[1]

## I.   BACKGROUND

Plaintiff is currently incarcerated at the Federal Correctional Complex in Coleman,

Florida ("FCC Coleman").  He initiated the above-captioned action on April 18, 2019, by filing a

complaint pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), raising claims alleging that

he received inadequate medical care while incarcerated at the United States Penitentiary in

Lewisburg, Pennsylvania ("USP Lewisburg").  (Doc. No. 1.)  Specifically, Plaintiff alleges that

in 2017 and 2018: (1) he never received follow-up care after he underwent a lumbar

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

laminectomy; (2) Defendants failed to evaluate him for medical shoes; and (3) Defendants failed to provide adequate pain medication.  (Id.)  Plaintiff names as Defendants the United States of America, Edinger, Ayers, and "John Does 1-10."  (Id.)  In an Order dated May 17, 2019, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint upon Defendants.  (Doc. No. 6.)  Plaintiff subsequently received several extensions of time to file a certificate of merit in support of his claims of medical negligence pursuant to the FTCA. Plaintiff, however, did not file a certificate of merit.

Defendants subsequently filed a motion to revoke Plaintiff's in forma pauperis status, asserting that Plaintiff had previously accrued three "strikes" pursuant to the Prison Litigation Reform Act ("PLRA") and, therefore, should not be permitted to proceed in forma pauperis in the above-captioned case.  (Doc. No. 65.)  In an Order dated November 30, 2020, the Court denied Defendants' motion, concluding that although Plaintiff had previously accrued three "strikes," Plaintiff's complaint satisfied the "imminent danger" requirement set forth in 28 U.S.C. § 1915(g).  (Doc. No. 73.)  The Court directed Defendants to file a response to Plaintiff's complaint within fourteen (14) days.  (Id.)  Defendants subsequently filed their motion for summary judgment.  (Doc. No. 74.)  On January 22, 2021, observing that Defendants raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[2]  (Doc. No. 94.)  The Court directed Plaintiff to file a brief in opposition addressing

---

[2] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

2

the issue of administrative exhaustion and a statement of material facts responding to

Defendants' statement within thirty (30) days.  (Id.)  Plaintiff filed his responsive materials (Doc.

Nos. 99, 100), as well as his motion for summary judgment (Doc. No. 95), two (2) discovery

motions (Doc. Nos. 97, 101), and a motion to supplement (Doc. No. 107).

## II.     PLAINTIFF'S MISCELLANEOUS MOTIONS

### A.     Motion for Limited Discovery

In his first motion for discovery, Plaintiff asserts that he lost certain legal documents

when he was transferred from USP Lewisburg, "particularly administrative remedy no. 953267-

F1, R1 and A1."  (Doc. No. 97 at 1.)  Plaintiff also asserts that other legal documents were

destroyed in a flood at USP Coleman in September of 2019.  (Id.)  Plaintiff seeks: (1) non-drug

formulary requests from 2016, 2018, and 2019; (2) Administrative Remedy 953267-F1, R1, and

A1; (3) all administrative remedies about medical issues from May of 2017 through January of

2019; and (4) all administrative remedy informal resolutions regarding medical issues from

August of 2018 through January of 2019.  (Id. at 1-2.)  Plaintiff suggests that these documents

"would assist in the accurate judicial decision by supporting the claims in question that Plaintiff

exhausted."  (Doc. No. 98.)  He claims that he "could have filed a 56(d) motion but since it's not

unduly burdensome to retrieve this simple request he ask[s] this Court's assistance."  (Id.)

Defendants argument that Plaintiff's motion should be denied because he did not properly serve

them, his request does not meet the criteria set forth in Rule 26(b) of the Federal Rules of Civil

Procedure, and his motion does not meet the requirements of Rule 56(d).  (Doc. No. 117 at 1.)

Rules 5(a) and (b) and 34(a) require that discovery requests be served upon opposing

parties.  See Fed. R. Civ. P. 5(a)-(b), 34(a).  Plaintiff does not dispute that he did not properly

serve these requests upon counsel for Defendants.  For that reason alone, his motion for limited

discovery will be denied.  Moreover, the Court agrees with Defendants that Plaintiff has not

demonstrated that the requested documents are "proportional to the needs of the case."  See Fed.

R. Civ. P. 26(b)(1).  Plaintiff himself has provided copies of Administrative Remedy Nos.

953267-FI and 953267-R1.  (Doc. No. 108.)  Moreover, Defendants have provided a copy of

Plaintiff's Administrative Remedy Generalized Retrieval record, which shows the 129

administrative remedies filed by Plaintiff during the relevant time.  (Doc. No. 92 at 1-67.)

The Court also agrees with Defendants that Plaintiff's motion fails to satisfy the

requirements of Rule 56(d) of the Federal Rules of Civil Procedure.  Rule 56(d) "allows, in

certain circumstances, for supplemental discovery after a motion for summary judgment has

been filed."  See Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014) (citing Fed. R. Civ. P.

56(d)).  "Rule 56(d) states that '[i]f a nonmovant shows by affidavit or declaration that, for

specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

discovery; or (3) issue any other appropriate order."  Shelton v. Bledsoe, 775 F.3d 554, 565-66

(3d Cir. 2015) (quoting Fed. R. Civ. P. 56(d)).

Plaintiff has not submitted an affidavit or declaration pursuant to Rule 56(d).  The Third

Circuit has noted that, even if an affidavit is not submitted, the party must "identify with

specificity 'what particular information is sought; however, if uncovered, it would preclude

summary judgment; and why it has not previously been obtained."  See Lunderstadt v. Colafella,

885 F.2d 66, 71 (3d Cir. 1989) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d

Cir. 1988)).  Plaintiff's motion, however, fails to provide this explanation.  Accordingly, the

Court will deny Plaintiff's motion for limited discovery.  (Doc. No. 97.)

**B.      Plaintiff's Motion for Discovery**

In his second motion for discovery, Plaintiff seeks copies of various administrative remedies as well as camera surveillance.  (Doc. No. 101.)  Defendants assert that Plaintiff's motion should be deemed withdrawn because he failed to file a brief in support thereof.  (Doc. No. 117 at 11.)  The Local Rules of this Court state:

> Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion.  If the motion seeks a protective order, a supporting brief shall be filed with the motion.  If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn. A brief shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of any motion which has concurrence of all parties, and the reasons for the motion and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel.

M.D. Pa. L.R. 7.5.  The Court agrees with Defendants that Plaintiff failed to file a brief in support of his second motion for discovery.  The Court, therefore, will deem this motion (Doc. No. 101) withdrawn.

**C.      Motions to Supplement**

In his first motion to supplement (Doc. No. 107), Plaintiff requests leave to supplement his response to Defendants' motion for summary judgment with copies of various administrative remedies, and responses thereto (Doc. No. 108).  Defendants have not opposed Plaintiff's motion.  The Court, therefore, will grant Plaintiff's motion to supplement (Doc. No. 107) and consider the exhibits he proffers (Doc. No. 108) in its discussion of Defendants' motion for summary judgment.  In his second motion to supplement (Doc. No. 120), Plaintiff requests leave to supplement his statement of material facts and his response to Defendants' statement of material facts with citations to the record (Doc. Nos. 121, 122).  The Court will also grant this motion to supplement and consider Plaintiff's statements therein below.

**III.    MOTIONS FOR SUMMARY JUDGMENT**

    **A.    Legal Standard**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

    When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a

genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

"The rule is no different where there are cross-motions for summary judgment."

Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Muhammad v. Martin, No. 3:19-cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." See Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)).

### B.   Plaintiff's Motion for Summary Judgment

As an initial matter, Defendants maintain that Plaintiff's motion for summary judgment should be dismissed because of Plaintiff's failure to comply with Local Rule 56.1. (Doc. No. 118 at 9-11.) The Court agrees with Defendants. Local Rule 56.1 provides that all motions for summary judgment must be "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. Pa. L.R. 56.1. Moreover, "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." See id. In the instant case, although Plaintiff filed a statement of material facts (Doc. No. 103) in support of his motion for summary judgment, his statement fails to comply with Local Rule 56.1 because it does not include references to the parts of the record

that support the statements.  Instead, Plaintiff's statement consists of conclusory statements not supported by citations to the record.

In light of his <u>pro se</u> status, Plaintiff was advised, at the outset of the above-captioned action, of the requirements of Local Rule 56.1 by Standing Practice Order dated February 8, 2011.  (Doc. No. 3.)  Moreover, Defendants raised Plaintiff's failure to comply with the requirements of Local Rule 56.1 in their brief opposing Plaintiff's motion for summary judgment.  (Doc. No. 118.)  Plaintiff has attempted to address or correct this deficiency by filing his second motion to supplement (Doc. No. 120) and his supplemental consolidated brief (Doc. No. 122).  Plaintiff indicates that the "substantive evidence that support[s] his exhaustion claims are in [Doc. No.] 112 and Defendant[s'] administrative retrieval exhibit in their motion for summary judgment."  (Doc. No. 122 at 1.)  He also suggests that "the initial complaint and exhibits attached to that complaint support his argument."  (<u>Id.</u> at 2.)  Plaintiff asks that the Court "look at all his exhibits and incorp[o]rate the exhibits by reference along with [Doc. No.] 112 as citations to the record as a correction."  (<u>Id.</u> at 3.)  Plaintiff's references to the entire record are insufficient to comply with Local Rule 56.1.  <u>See</u> <u>Ingram v. SCI Camp Hill</u>, No. 3:08-cv-23, 2010 WL 4973302, at *5 (M.D. Pa. Dec. 1, 2010).  The Court, therefore, will dismiss Plaintiff's motion for summary judgment (Doc. No. 95) because of Plaintiff's failure to comply with Local Rule 56.1.  <u>See</u> <u>Landmesser v. Hazelton Area School Dist.</u>, 982 F. Supp. 2d 408, 412-13 (M.D. Pa. 2013) (dismissing <u>pro se</u> plaintiff's motion for summary judgment for the same reason).

###### C.     Defendants' Motion for Summary Judgment

###### 1.     Statement of Material Facts[3]

###### a.     Facts Regarding the Certificate of Merit

On July 1, 20219, the United States mailed Plaintiff a notice regarding the requirement that he file a certificate of merit.  (Doc. No. 91 ¶ 1.)  There is no certificate of merit "filed on the docket as of the date of filing the Defendants' Motion for Summary Judgment or the filing of the Brief in Support."  (Id. ¶ 2.)

###### b.     Facts Regarding Administrative Exhaustion

The Bureau of Prisons ("BOP") has "established an Administrative Remedy Program for inmates to resolve concerns related to their confinement."  (Id. ¶ 3.)  Inmates must first attempt

---

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 91.)
    Plaintiff's responsive statement of facts (Doc. No. 100) does not fully comply with Local Rule 56.1 because many of his denials of Defendants' allegations contain no references to the record.  As discussed above, Plaintiff's second motion to supplement and supplemental consolidated brief (Doc. Nos. 120, 122) do not correct this deficiency by their general references to the entire record.  The Court, therefore, will only consider those facts presented by Plaintiff that are properly supported by record citations.  See Coit v. Fisher, No. 1:18-cv-2439, 2020 WL 4260762, at *2 n.3 (M.D. Pa. July 24, 2020) (citing Lynch v. Ducasse, No. 3:18-cv-2044, 2020 WL 3547375, at *2 (M.D. Pa. June 30, 2020)).  Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

to resolve matters informally by presenting complaints "to staff on an Informal Resolution Attempt form commonly referred to as a BP-8." (Id. ¶ 4.)  If informal resolution is not successful, "the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy, commonly referred to as a BP-9." (Id. ¶ 5.)  The BP-9 must be submitted within twenty (20) calendar days "from the date of the event which is the subject of the remedy." (Id. ¶ 6.)  The Warden has twenty (20) calendar days to respond. (Id. ¶ 7.)

If an inmate is not satisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal, or BP-10, with the Regional Director within twenty (20) days from the date of the response. (Id. ¶ 8.)  The Regional Director has thirty (30) days to respond. (Id. ¶ 9.)  The inmate may appeal the Regional Director's response by filing "a Central Office Administrative Remedy Appeal, or BP-11, with the BOP's Central Office within thirty days of the Regional Director's response." (Id. ¶ 10.)  The Central Office has forty (40) days to respond. (Id. ¶ 11.)  The appeal to the Central Office "is the final administrative level of appeal in the BOP," and no appeal is considered to "have been fully exhausted until it is decided on its merits by the BOP's Central Office." (Id. ¶¶ 12-13.)  "If, at any level, the inmate does not receive a response within the allotted time for a reply, the absence of a response is considered a denial at that level." (Id. ¶ 14.)

Plaintiff filed 129 administrative remedies "from April 19, 2017, the date he alleges Defendant Edinger improperly lifted his medical hold, and April 18, 2019," the date he filed the instant complaint. (Id. ¶ 15.)  On April 3, 2019, Plaintiff "filed Administrative Remedy Number 973121 at USP Lewisburg requesting a soft shoe pass." (Id. ¶ 16.)  The remedy was denied on April 8, 2019. (Id. ¶ 17.)  On April 18, 2019, Plaintiff "filed the instant complaint prior to properly pursuing the remedy request through the additional two levels of the Administrative

11

Remedy Program." (Id.¶ 18.)  Plaintiff exhausted administrative remedies regarding his medical

denial claim, medical treatment denial claim, a request for pain relief, and a claim that sick call

requests were not being responded to.  (Id. ¶ 19 n.4.)[4]

### c.   Facts Regarding Plaintiff's Medical Care

Defendant Edinger is the Clinical Director at USP Lewisburg, and is "responsible for

overseeing the clinical care of inmates designated" there.  (Id.¶¶ 20-21.)  On March 8, 2017,

Plaintiff "underwent a L5-S1 (Lumbosacral Joint) Maximum Access Surgery Posterior [Lumbar]

Interbody Fusion (MAS PLIF) at UPMC Susquehanna Health Hospital in Williamsport,

Pennsylvania." (Id. ¶ 22.)  He was discharged and transported back to USP Lewisburg on March

9, 2017.  (Id. ¶ 23.)  Discharge instructions "included staple removal in ten days, a lumbar x-ray

before the postoperative appointment, and for [Plaintiff] to wear the back brace 'if told to do

so.'" (Id. ¶ 24.)

After Plaintiff returned to USP Lewisburg, Defendant Edinger evaluated him "and

prescribed Acetaminophen/Codeine, Ibuprofen, and Gabapentin for back pain, noted the six-

week postoperative appointment request, associated x-ray, and scheduled him for daily wound

care and dressing changes." (Id. ¶ 25.)  On March 10, 2017, Defendant Edinger evaluated

Plaintiff during a wound check.  (Id. ¶ 26.)  He noted that the "incision was clean, dry, with mild

serosanguineous drainage present on the dressing, staples intact and wound edges clean and well

approximated." (Id. ¶ 27.)  On March 13, 2017, during a dressing change, Plaintiff "was

ambulating under his own power and was assisted in reapplying his back brace." (Id. ¶ 28.)

Plaintiff's staples were removed on March 17, 2017.  (Id. ¶ 29.)  On March 21, 2017, Plaintiff

---

[4] Defendants aver that "[n]ot a single remedy filing pertains to [Plaintiff's] transfer, the removal of the medical hold, or alleged resultant suspension of medical care caused by it." (Doc. No. 91 ¶ 19.)  Plaintiff disagrees.  (Doc. No. 100 ¶ 19.)

was "again prescribed Amitriptyline after reports of increased back pain at night." (Id. ¶ 30.) On March 25, 2017, Plaintiff refused the Amitriptyline, stating that it "made him 'fall asleep too quick.'" (Id. ¶ 31.)

Plaintiff's scheduled postoperative x-ray on March 31, 2017 "revealed successful posterior spinal fusion at the lumbosacral joint and intervertebral fusion device with hardware intact." (Id.¶ 32.) On April 17, 2017, Plaintiff "had his postoperative neurosurgery evaluation at an outside contract hospital." (Id. ¶ 33.) The neurosurgeon found that Plaintiff "was 'doing well post-op' and [that he was] to 'keep using back brace.'" (Id. ¶ 34.) On April 19, 2017, Defendant Edinger contacted the surgeon's office "to discuss the remaining plan of care, as [Plaintiff] was pending transfer to a non-Special Management Unit (SMU) facility." (Id. ¶ 35.) The neurosurgeon responded that "he was satisfied with [Plaintiff's] recovery progress and his lone remaining recommendation was an additional six-month x-ray to evaluate hardware stability." (Id. ¶ 36.) Therefore, "with no medical indication or further follow-up care requested, Defendant Edinger lifted his medical hold and submitted the radiology request for an additional x-ray at the six-month mark." (Id. ¶ 37.)

On April 24, 2017, Plaintiff was transferred to USP McCreary in Pine Knot, Kentucky. (Id. ¶ 38.) On May 9, 2017, USP McCreary "submitted a consultation request for a neurosurgery evaluation." (Id. ¶ 39.) On May 24, 2017, an x-ray of Plaintiff's left spine "revealed intact hardware with no evidence of failure and no acute findings." (Id. ¶ 40.) On November 2, 2017, Plaintiff "had another spine x-ray that revealed stable posterior spinal fusion hardware at the lumbosacral joint an[d] no change in the radiographic appearance of the lumbar spine compared to the May 24, 2017, x-ray." (Id. ¶ 41.) On December 28, 2017, Plaintiff "refused formulary pain medications for his chronic back pain and spondylolisthesis." (Id. ¶ 42.) On April 5, 2018,

Plaintiff's prior care provider medically cleared him for transfer back to the USP Lewisburg SMU, finding "there was no medical reason to exclude him from SMU placement."  (<u>Id.</u> ¶ 43.) In the medical summary associated with the clearance, "the Physician Assistant noted [Plaintiff's] Spine, T-Spine, and L-Spine were normal with no palpable signs of present scoliosis, no tenderness with palpitation[,] and no deformity present."  (<u>Id.</u> ¶ 44.)

On August 6, 2018, Plaintiff was "evaluated upon his return to USP Lewisburg during his intake screening and his medications were reconciled with no new health problems identified." (<u>Id.</u> ¶ 45.)  On August 17, 2018, Defendant Edinger evaluated Plaintiff "and noted his medical history of hypertension, asthma, vitamin D deficiency, and chronic lower back pain."  (<u>Id.</u> ¶ 46.) Plaintiff "indicated he was experiencing dysesthesia/paresthesia down his right leg combined with pain and would be filing an additional lawsuit against [Defendant Edinger] for 'allowing' him to be transferred from the SMU."  (<u>Id.</u> ¶ 47.)  Defendant Edinger submitted a consultation request for Plaintiff to receive an electromyography ("EMG") of his right lower extremity.  (<u>Id.</u> ¶ 48.)

Plaintiff underwent the EMG on October 4, 2018.  (<u>Id.</u> ¶ 49.)  Defendant Edinger explained to Plaintiff "that back surgery does not fix back pain but is instead performed to relieve neurologic impingement."  (<u>Id.</u> ¶ 50.)  On October 23, 2018, Defendant Edinger "reviewed the EMG results, which revealed a mild distal sural nerve injury."  (<u>Id.</u> ¶ 51.) Defendant Edinger noted that this was not the cause of Plaintiff's back pain, "but placed a neurology consultation request to evaluate his persistent pain with a radicular pattern and prescribed him Naproxen for lower back pain, after previous unsuccessful trials of gabapentin (which [Plaintiff] was improperly diverting to another inmate in September 2017), Duloxetine (which [Plaintiff] elected to discontinue), Amitriptyline, and Carbamazepine."  (<u>Id.</u> ¶ 52.)

On October 24, 2018, Defendant Ayers evaluated Plaintiff "for reported headaches, nosebleeds, and dizziness." (Id.¶ 53.) Defendant Ayers educated Plaintiff "on the importance of medication compliance and instructed him to purchase allergy medication from the commissary for allergic rhinitis and sinus headache relief." (Id. ¶ 54.) On November 2, 2018, Plaintiff asked Defendant Ayers "about his 'soft shoe pass' and was informed he did not currently meet the criteria for medical shoes and does not suffer from severe foot neuropathy or deformity." (Id. ¶ 55.) Plaintiff responded that he would "just fall down the stairs then." (Id. ¶ 56.) On November 8, 2018, Plaintiff requested that his Naproxen prescription be discontinued. (Id. ¶ 57.)

On January 29, 2019, Plaintiff "refused the scheduled neurology evaluation, thereby inhibiting further assessment of any new mild distal sural nerve injury." (Id. ¶ 58.) On February 4, 2019, Defendant Ayers evaluated Plaintiff "for complaints of left knee pain after a supposed February 1, 2019, fall from an upper bunk." (Id. ¶ 59.) Defendant Ayers noted that Plaintiff "had a bottom bunk pass due to back issues and was always on the bottom bunk when observed by officers and medical staff." (Id. ¶ 60.) Her evaluation revealed no signs of trauma, and Plaintiff "was ambulating without issue." (Id. ¶ 61.) Plaintiff "was educated on the need to immediately notify staff in the event he believes he suffered an injury so a timely evaluation could be performed, to rest the knee, apply cold compresses, and take over the counter ibuprofen." (Id. ¶ 62.) On February 14, 2019, Defendant Ayers "ordered a left knee x-ray to rule out any abnormality." (Id. ¶ 63.) The x-ray was performed on March 7, 2019, and was "unremarkable with no fracture or malalignment." (Id. ¶ 64.)

On March 18, 2019, Defendant Edinger "entered an Administrative Note memorializing that [Plaintiff] does not have a current, symptomatic foot condition requiring a medical or orthotic shoe." (Id. ¶ 65.) Plaintiff's "chronic low back pain and radiculopathy would not be

15

ameliorated by sneakers or medical shoes."  (<u>Id.</u> ¶ 66.)  On March 20, 2019, Plaintiff "agreed to, and was prescribed, Carbamazepine to treat his lower back pain."  (<u>Id.</u> ¶ 67.)  On May 9, 2019, Plaintiff's Carbamazepine dosage was increased from 200mg to 400 mg during a chronic care visit.  (<u>Id.</u> ¶ 68.)  On June 10, 2019, Plaintiff "requested the Carbamazepine be discontinued[,] and the refusal was memorialized on a medical treatment refusal form and the possible consequences, to include worsening of pain, were carefully explained to him by medical staff."  (<u>Id.</u> ¶ 69.)

### 2.   Discussion

#### a.   FTCA Claims

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court," and the "extent of the United States' liability under the FTCA is generally determined by reference to state law."  See <u>In re Orthopedic Bone Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 362 (3d Cir. 2001) (quoting <u>Molzof v. United States</u>, 502 U.S. 301, 305 (1992)).  In the instant case, Plaintiff asserts claims of medical negligence under the FTCA. Where a federal court is presented with a claim brought under the FTCA, it applies the law of the state in which the alleged tortious conduct occurred.  See 28 U.S.C. § 1346(b).  In this case, the allegedly tortious conduct occurred in Pennsylvania, and, therefore, the Court refers to Pennsylvania tort law to assess the extent of the United States' potential liability for Plaintiff's medical negligence claims.

Defendants seek summary judgment as to Plaintiff's medical negligence claims due to his failure to file a certificate of merit.  (Doc. No. 93 at 16-22.)  Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, plaintiffs seeking to raise medical negligence claims must file a valid certificate of merit.  That rule states in pertinent part:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either []

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3. The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262-65 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007). This requirement applies with equal force to counseled complaints and to pro se medical malpractice actions asserted under state law. See Hodge v. Dep't of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit); Levi v. Lappin, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009).

Plaintiff concedes that Pennsylvania rules require a certificate of merit but asserts that the requirement should be waived "because [he] assert[s] ordinary negligence such that the layman can understand." (Doc. No. 99 at 6.) This Court has recognized that "prison staff preventing a prisoner from receiving prescribed medication and preventing a prisoner access to outside medical care can also be based upon theories of ordinary negligence." See Dorsey v. Peter, No.

3:19-cv-113, 2020 WL 881134, at *10 (M.D. Pa. Feb. 21, 2020).  "To determine whether a

plaintiff's claim is one of ordinary or professional negligence, courts must look to the substance,

rather than the form, of the complaint."  See Baiter v. United States, No. 3:09-cv-1409, 2014 WL

1365905, at *25 (M.D. Pa. Apr. 7, 2014).  Whether a negligence claim concerns "professional

versus ordinary negligence deals primarily with the breach of a professional standard of care."

See Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 507 (Pa. 2009).  The

Pennsylvania courts have distinguished medical malpractice from ordinary negligence as

follows:

> A medical malpractice claim is distinguished by two defining characteristics.  First,
> medical malpractice can occur only within the course of a professional relationship.
> Second, claims of medical malpractice necessarily raise questions involving
> medical judgment.  Claims of ordinary negligence, by contrast, raise issues that are
> within the common knowledge and experience of the [fact-finder].  Therefore, a
> court must ask two fundamental questions in determining whether a claim sounds
> in ordinary negligence or medical malpractice: (1) whether the claim pertains to an
> action that occurred within the course of a professional relationship; and (2)
> whether the claim raises questions of medical judgment beyond the realm of
> common knowledge and experience.  If both these questions are answered in the
> affirmative, the action is subject to the procedural and substantive requirements that
> govern medical malpractice actions.

Ditch v. Waynesboro Hosp., 917 A.2d 317, 322 (Pa. Super Ct. 2007).  In sum, "a complaint

'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of

rendering medical treatment.'"  See Iwanejko, 249 F. App'x at 944 (quoting Ditch, 917 A.2d at

323).

In the instant case, the conduct giving rise to Plaintiff's claims clearly arose within the

course of a professional relationship and constituted an "integral part of the process of rendering

medical treatment."  See id.  Plaintiff, therefore, was required to file a certificate of merit, which

he failed to do.  The usual consequence for failing to file a certificate of merit is dismissal of the

claim without prejudice.  See Booker v. United States, 366 F. App'x 425, 427 (3d Cir. 2010).

However, dismissal with prejudice is proper when the statute of limitations has run on the claim. See Smith v. Bolava, No. 14-cv-5753, 2015 WL 2399134, at *3 (E.D. Pa. May 20, 2015) (quoting Booker, 366 F. App'x at 427).  Pennsylvania's statute of limitations for medical malpractice claims is two years.  See 42 Pa. Cons. Stat. § 5524(7).  Usually, the statute of limitations for a claim arising under Pennsylvania law begins to run at "the occurrence of the final significant event necessary to make the claim suable."  See Barns v. Am. Tobacco Co., 161 F.3d 127, 152 (3d Cir. 1998).  In some cases, however, the application of the discovery rule will toll the limitations period until "the plaintiff knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  See Romah v. Hygienic Sanitation Co., 705 A.2d 841, 858 (Pa. Super. 1997).  The commencement of the limitations period may be determined as a matter of law only "where the facts are so clear that reasonable minds cannot differ."  See Crouse v. Cyclops Indus., 745 A. 2d 606, 611 (Pa. 2000). As noted supra in the statement of material facts, Plaintiff's medical negligence claims involve conduct that occurred from 2017 through June of 2019.  The Court, therefore, cannot definitively conclude that the statute of limitations has run on Plaintiff's medical negligence claims. Accordingly, the Court will grant summary judgment to Defendants on Plaintiff's FTCA claims and dismiss such claims without prejudice.

### b.  **Bivens** Claims

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his claims concerning the lifting of the medical hold and subsequent transfer, delay in care caused by the transfer, and soft shoe pass; and (2) they are entitled to qualified immunity. (Doc. No. 93 at 2-3.)  The Court considers Defendants' arguments below.

###### i.    Exhaustion of Administrative Remedies

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the

applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C.

§ 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust

irrespective of the forms of relief sought and offered through administrative avenues.").  Section

1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison

conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  See 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  See

Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the

relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section

1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).

Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims

in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as

including a procedural default component, holding that inmates must fully satisfy the

administrative requirements of the inmate grievance process before proceeding with a claim in

federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United

States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous

circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by

exhausting administrative remedies after the filing of the complaint in federal court").  Courts

have also concluded that inmates who fail to complete the prison grievance process in a full and

timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  See Harris, 149 F. App'x at 59.  Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368.  Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated <u>pro</u> <u>se</u> petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused.  <u>See</u> <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  <u>See</u> <u>id.</u> at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  <u>See</u> <u>id.</u>  Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use."  <u>See</u> <u>id.</u> Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation."  <u>See</u> <u>id.</u> at 1860.  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  <u>See</u> <u>Rinaldi v. United States</u>, 904 F.3d 257, 268 (3d Cir. 2018).  The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

<u>See</u> <u>Hardy v. Shaikh</u>, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that Plaintiff failed to exhaust his claims concerning the lifting of the medical hold, his transfer, any delay in care caused by the transfer, and the failure to provide soft shoes.  (Doc. No. 93 at 26.)  Specifically, Defendants aver that although Plaintiff filed 129

administrative remedies between April 19, 2017, and April 18, 2019, not a single one "pertains to lifting the medical hold, permitting [Plaintiff] to be transferred[,] and any delay in care caused by the transfer."  (Id.)  They further assert that although Plaintiff filed administrative remedy 973121 requesting a soft shoe pass, he did not appeal the denial of that remedy "through the remaining two levels of the Administrative Remedy Program."  (Id.)

In response, Plaintiff avers that he was transferred to USP McCreary and was unable to file his remedies.  (Doc. No. 119 at 1.)  He asserts that he "attempted to file a BP-8 [but] there was no response."  (Id.)  The documents received from Plaintiff indicate that on August 28, 2018, Plaintiff filed a BP-8 asserting that he has a soft shoe pass and that his sick call requests were being ignored.  (Doc. No. 108-2 at 5-6.)  Plaintiff claimed that Defendant Edinger conspired with other officials to have him transferred in "order to deprive [him] of medical care." (Id. at 6.)  The BP-8 indicates that a response was prepared by S. Brown on August 30, 2018, but there is no indication of when the response was provided to Plaintiff.  (Id. at 7.)

The Third Circuit has recently concluded that an inmate fully discharges the exhaustion requirement when prison officials refuse to respond to his requests for informal resolution.  See Millhouse v. Heath, 815 F. App'x 628, 631 (3d Cir. 2020).  "Nor does the regulatory presumption that a non-response acts as a denial, see 28 C.F.R. § 542.18, apply to informal resolution."  See id.  On this record, the Court cannot conclude that the failure to provide the response to the BP-8 to Plaintiff was a "denial of an informal request that would trigger additional exhaustion requirements."  See id.

Plaintiff also suggests that he exhausted the claims at issue, particularly his claim regarding soft shoes, in administrative remedy 953267.  (Doc. No. 99 at 2-3.)  Plaintiff has submitted copies of these remedies.  (Doc. No. 108-2.)  In this remedy, Plaintiff averred that his

sick call requests had not been addressed, and he requested appropriate treatment, soft shoes, a back brace, pain medication, and a lower bunk authorization.  (Id.)  While Plaintiff has only provided copies of the first two levels of this administrative remedy (id.), the exhibits submitted by Defendants suggest that he appealed administrative remedy 953267 to the final level of appeal (Doc. No. 92-1 at 46).

Given the state of the record, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Plaintiff such that his failure to exhaust his claims regarding the medical hold, his transfer, and any delay in care caused by the transfer could be excused.  Moreover, the record suggests that Plaintiff may have exhausted his claim regarding the failure to provide soft shoes.  Thus, the Court declines to grant summary judgment on the basis that Plaintiff failed to exhaust properly these claims.  Accordingly, the Court considers the merits of Plaintiff's claims below.

### ii.      Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  Id.  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  See al-Kidd, 563 U.S. at

741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."  See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard.  In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[5] See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In the instant case, Plaintiff alleges that Defendants Edinger and Ayers violated his Eighth Amendment rights by failing to provide adequate medical care.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment of prisoners.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (noting that "[t]o violate the Cruel and Unusual Punishment Clause, a

---

[5] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

prison official must have a sufficiently culpable state of mind. . . .  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety.").  An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.  In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse, 182 F.3d at 197.  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  See Farmer, 511 U.S. at 837. Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.

2004).  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." See id.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  See id.  Moreover, because only egregious acts or omissions violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White, 897 F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274,

278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Plaintiff suggests that Defendant Edinger failed to provide follow-up care after his lumbar laminectomy and failed to provide adequate pain medication.  (Doc. No. 1.)  He suggests further that Defendant Edinger delayed his receipt of medical care by lifting his medical hold, which caused Plaintiff to be transferred to USP McCreary.  (Id.)  The record before the Court, however, demonstrates that Defendant Edinger was not deliberately indifferent to Plaintiff's serious medical needs.  The record establishes after Plaintiff returned to USP Lewisburg following his surgery on March 8, 2017, Defendant Edinger evaluated him, prescribed pain medication, noted his follow-up appointment with the neurosurgeon, and scheduled him for wound care.  (Doc. No. 91 ¶ 25.)  Defendant Edinger provided wound care and staple removal, and also prescribed additional pain medication.  (Id. ¶¶ 27, 29-30.)  Moreover, Plaintiff was seen by the neurosurgeon on April 17, 2017, who noted that Plaintiff was "doing well post-op" and should "keep using back brace."  (Id. ¶ 34.)  Following a consultation with the neurosurgeon two (2) days later, Defendant Edinger lifted the medical hold.  (Id. ¶ 35.)  The record reflects that Plaintiff received medical care during his incarceration at USP McCreary.  (Id. ¶¶ 38-41.)  Contrary to Plaintiff's allegations, there is no evidence before the Court that Defendant Edinger's actions caused a delay or withholding of Plaintiff's medical care after his transfer.

The record further establishes that Defendant Edinger provided care to Plaintiff upon his return to USP Lewisburg in August of 2018.  (Id. ¶ 45-52.)  Plaintiff continued to complain about back pain, so Defendant Edinger sent him for an EMG and also prescribed pain

28

medication, but Plaintiff was found to be diverting that medication to another inmate.  (Id. ¶¶ 49,

52.)  Defendant Edinger advised Plaintiff that the EMG revealed a mild distal sural nerve injury,

and that his surgery had been performed to relieve neurological impingement and was not

intended to completely erase his pain.  (Id. ¶¶ 50-52.)

In response, Plaintiff makes conclusory statements that Defendant Edinger forced him to

sign a medical refusal form so that he could be transferred, knew that he would not have a July

2017 follow-up appointment and that his X-rays would not be performed, and that he had the

opportunity to prescribe other pain medications.  (Doc. No. 99 at 3-5.)  Plaintiff, however, has

provided no supporting evidence for his allegations.  Upon review of the record, the Court agrees

with Defendants that Plaintiff's Eighth Amendment claims against Defendant Edinger amount to

no more than disagreement with his professional judgment, which is insufficient to maintain an

Eighth Amendment claim.  See Pearson, 850 F.3d at 535; Taylor, 36 F. App'x at 229.

Plaintiff also suggests that Defendants violated his Eighth Amendment rights by failing to

evaluate him for medical shoes "and/or ensure that [he] had approved medical shoes."  (Doc. No.

1 at 3.)  Defendants assert that they are entitled to qualified immunity because the undisputed

medical evidence does not demonstrate that Plaintiff had a serious medical need for medical

shoes.  (Doc. No. 93 at 33-34.)  Plaintiff, however, has presented medical records indicating that

on May 9, 2017, during his incarceration at USP McCreary, a medical provider noted that

Plaintiff had "significant left foot neuropathy."  (Doc. No. 112 at 7.)  That same provider

indicated that Plaintiff was approved for medical shoes.  (Id. at 11.)

Although the record suggests that Plaintiff had a serious medical need, the Court

concludes that Plaintiff has not presented evidence suggesting that Defendants were deliberately

indifferent to that need.  On November 2, 2018, Plaintiff asked Defendant Ayers about his "soft

shoe pass," and she noted that Plaintiff "currently does not meet criteria for medical shoes at this time.  He does not have severe neuropathy of feet or foot deformity."  (Doc. No. 92-2 at 310.) On March 18, 2019, Defendant Edinger noted that although Plaintiff had a "history of pes planus," he "was not prescribed an orthotic for this condition.  He was not prescribed medical shoes.  Rather, he was given permission to utilize sneakers for comfort."  (Id. at 294.)  Defendant Edinger indicated that Plaintiff did "not have a current, symptomatic foot condition" and that his chronic low back pain and radiculopathy would not be "ameliorated by sneakers."  (Id.)

Upon review of the record, the Court agrees with Defendants that Plaintiff's claim regarding medical shoes amounts to no more than disagreement with their professional judgment, which is insufficient to maintain an Eighth Amendment claim.  See Pearson, 850 F.3d at 535; Taylor, 36 F. App'x at 229.  Moreover, the fact that Defendants Ayers and Edinger disagreed with providers at USP McCreary regarding Plaintiff's need for medical shoes is not actionable under the Eighth Amendment.  See White, 897 F.2d at 108-10.  Although Plaintiff's medical records indicate that he was issued medical shoes by another provider on June 17, 2019 (Doc. No. 92-2 at 358), this is insufficient to establish that Defendants were deliberately indifferent to his medical needs.  The Court, therefore, will grant summary judgment to Defendants as to Plaintiff's Eighth Amendment claims against Defendants Edinger and Ayers.

## IV.    PLAINTIFF'S CLAIMS AGAINST JOHN DOES 1-10

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners

proceeding in forma pauperis and prisoners challenging prison conditions.  See id.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines

that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42

U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss

any action brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that

the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the

standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D.

Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim

under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v.

Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint

pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal

Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint

must set out "sufficient factual matter" to show that its claims are facially plausible.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is

liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual

allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle 429 U.S. at 106.  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

In his complaint, Plaintiff notes that Defendants John Does 1-10 "are adult individuals at all times relevant to this action, they were employed by, or agents of[,] the Federal Bureau of Prisons."  (Doc. No. 1 at 2-3.)  Plaintiff has not identified these John Does, and he provides no further facts suggesting how they violated his constitutional rights or demonstrated negligence. For that reason alone, Plaintiff's claims against John Does 1-10 will be dismissed.  See Robinson v. Wheary, No. 1:16-cv-2222, 2017 WL 2152365, at *2-3 (M.D. Pa. May 17, 2017) (concluding

that dismissal of the inmate-plaintiff's complaint was appropriate because "while the caption of the complaint name[d] numerous individual defendants, it contain[ed] no well-pleaded factual averments relating to these specific defendants in the body of the complaint").  Moreover, for the reasons set forth above, Plaintiff cannot maintain his Eighth Amendment and negligence claims. Accordingly, the Court will not permit Plaintiff to amend his complaint with respect to his claims against John Does 1-10.

## V.    CONCLUSION

For the foregoing reasons, the Court will: (1) grant Defendants' motion for summary judgment (Doc. No. 74); (2) dismiss Plaintiff's motion for summary judgment (Doc. No. 95) for Plaintiff's failure to comply with Local Rule 56.1; (3) deny Plaintiff's motion for limited discovery (Doc. No. 97); (4) deem Plaintiff's motion for discovery (Doc. No. 101) withdrawn for failure to file a brief in support thereof as required by Local Rule 7.5; and (5) grant Plaintiff's motions to supplement (Doc. Nos. 107, 120).  The Court will also dismiss Plaintiff's claims against John Does 1-10 pursuant to 28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B)(ii).  An appropriate Order follows.